IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 18-CR-00508-CMA

UNITED STATES OF AMERICA,

        Plaintiff,

v.

DANIEL B. RUDDEN,

        Defendant

---

**MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)**

---

    Mr. Rudden, through counsel, respectfully moves this Court to grant his motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) and order the remainder of his sentence of confinement to be reduced to time served, or in the alternative, to be modified and served on home confinement followed by supervised release.[1] This motion should be granted due to the "extraordinary and compelling reasons" confronting the federal prison system by the COVID-19 pandemic and the fact that Mr. Rudden is of advanced age and in a high-risk COVID-19 category based on preexisting medical conditions; is not a danger to the community; and further because respect for the law and general deterrence, and other notable Section 3553(a) factors, would not be undermined by converting the remainder of his sentence to time served or home

---

[1] The United States Attorney objects to Mr. Rudden's release under compassionate release.

1

confinement. Considering the urgent and serious nature of this request, Mr. Rudden requests this Court expedite any response or argument related to this motion.

## I.   BACKGROUND

On October 29, 2018, a one-count indictment was filed charging Mr. Rudden with Mail Fraud in violation of 18 U.S.C. § 1341. A forfeiture action was also filed. On December 7, 2018, Mr. Rudden waived Indictment and pleaded guilty to the single count and admitted the forfeiture allegation. On June 20, 2019, the Defendant was sentenced to one-hundred twenty (120) months imprisonment followed by three years of supervised release, which represented a sentence at the top of the guideline range as calculated in the Final Presentence Report (PSR). *See* PSR at pg. 15, ¶ 93. Mr. Rudden is currently incarcerated at USP Leavenworth. According to the Bureau of Prison's (BOP) website, he is scheduled for release on January 21, 2028.[2]

While Mr. Rudden has not completed 50% of his sentence, Compassionate Release, pursuant to 18 U.S.C. § 3582(c)(1)(A), has been granted to people who have served less than 50% of their time. *See*, *United States v. Robinson*, 18-03042-04-CR-S-SRB (WDMO) (served approximately 28 of his 132 month sentence); *United States v. Harrison*, 17-00264-01-CR-W-GAF(WDMO) (served approximately 23 of 112 month sentence); *United States v. Rodriguez-Acedo*, Case No. 19-cr-3539, Dkt. No. 44 (S.D. Cal. July 21, 2020) (served approximately 11 months of a 37 month sentence); *United States v. Tubbs-Smith*, No. 18-20310, ECF No. 65 (E.D. Mich. July 2, 2020) (release

---

[2] Per BOP Inmate Locater.

after 26 months of 10 year sentence to serve state sentence); *United States v. T*orres, 2020 WL4019038 (S.D.Fla., July 14, 2020) (5 months into 24 month sentence); *United States v. Loyd*, No. CR15-20394-1, 2020 WL 2572275 (E.D. Mich. May 21, 2020) (release after 3 years of 10 year sentence). *United States v. Locke*, No. 18-cr-132, 2020 WL 3101016,at 1, 6 (W.D. Wash. June 11, 2020) (compassionately releasing a defendant who had "served no more than six months of his 62-month sentence"); *United States v. Brown*, Case No. 2:18-cr-360,Dkt. No. 35 (N.D. Ala. May 22, 2020) (granting compassionate release to defendant 11 months into a 60 month sentence); *United States v. Ben Yhwh*, --- F. Supp. 3d ---, 2020 WL 1874125, at *2 (D. Hawaii Apr. 13, 2020) (granting compassionate release to defendant less than 13 months into 60 month sentence); *United States v. Delgado*, 2020 WL 2464685, at *1, *4 (D. Conn. Apr. 30, 2020)(granting compassionate release to defendant 29 months into 120 month sentence); *United States v. Winston*, Case No. 1:13-cr-639-RDB, Dkt. No. 295 (D. Md. Apr. 28, 2020) (granting compassionate release to defendant 36 months into 120-month sentence). *United States v. Paul J. Manafort, Jr.*, Case No. 17-201 (ABJ)(S-4) (United States District Court for the District of Columbia). President Trump's former campaign manager was granted compassionate release after serving less than 50% of his seven-year sentence.

Mr. Rudden is 73 years old and suffers from type 2 diabetes mellitus and hypertension.[3] (Exhibit A, select medical records confirming diagnosis). Between Mr.

---

[3] Mr. Rudden was diagnosed with both medical conditions in June of 2019. As such, neither condition was discussed in the PSR or considered by the court at sentencing.

Rudden's advanced age and medical issues, he is at an extraordinary high risk of death should he contract COVID-19 while incarcerated.[4] Specifically, Mr. Rudden's age and medical conditions render him at least five times (5x) more likely to be hospitalized and ninety times (90x) more likely to die should he contract COVID-19.[5] The nature of Mr. Rudden's confinement at USP Leavenworth prevents him from practicing the social distancing necessary to keep him safe from contracting the virus.

While the facts underlying Mr. Rudden's conviction were serious, his crime is undeserving of a death sentence. Mr. Rudden's request for immediate compassionate release is intended to avoid such an unintended and cataclysmic result. Mr. Rudden has no criminal history outside of the conviction in this case, which was non-violent. He has had no disciplinary actions since he has been placed in custody. He has an adequate release plan, is not a danger to others, and can be adequately supervised in the community. It is for these reasons that he moves this court for immediate compassionate release.

## II.    DISCUSSION

### a.    Legal Standard for Compassionate Release

Mr. Rudden seeks a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018. The First Step Act was intended to "expand compassionate release" and "expedite compassionate release applications." 164 Cong.

---

[4] Per https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html, updated July 17, 2020.
[5] Per https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-underlying-medical-conditions.html and https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-age.html (last viewed August 20, 2020).

Rec. S7314-02, 2018 WL 6350790 (Dec. 5, 2018) (statement of co-sponsor Senator Cardin). As amended, § 3582(c)(1)(A) permits an inmate, who satisfies certain statutorily mandated conditions, to file a motion with the sentencing court for "compassionate release." As relevant to Mr. Rudden's motion, the statute now provides:

> (c) Modification of an imposed term of imprisonment. --The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction;
>
> ...
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

The relevant statute gives this Court authority to reduce a previously imposed sentence if three requirements are satisfied: (1) the inmate has either exhausted administrative review of the Bureau of Prison's failure to bring such a motion, or waited until 30 days after the request was made to the warden where the inmate is housed if that is earlier; (2) the inmate has presented extraordinary and compelling reasons for the requested reduction; and (3) the reduction is consistent with the Sentencing Commission's policy statement. 18 U.S.C. § 3582(c)(1)(A); *see also* Pub. L. 115-391, 132 Stat. 5194, at § 603 (Dec. 21, 2018).

The Sentencing Commission's Policy Statement pertaining to sentence reductions under 18 U.S.C. § 3582(c)(1) is found in U.S.S.C. § 1B1.13. It states that a court may reduce a term of imprisonment if "the defendant is not a danger to the safety of any other person or to the community" and "extraordinary and compelling reasons warrant such a reduction." Further, it provides four categories of extraordinary and compelling reasons: "(A) Medical Condition of the Defendant," "(B) Age of the Defendant," "(C) Family Circumstances," and "(D) Other Reasons." U.S.S.G. § 1B1.13, cmt. n.1. Finally, the policy statement directs the court to consider the factors set forth in 18 U.S.C. § 3553(a) in deciding whether compassionate release is appropriate and what form compassionate release should take. U.S.S.G. § 1B1.13 cmt. n.4.

Many courts have found "extraordinary and compelling reasons" to justify compassionate release where the defendant's underlying health conditions place him at high risk of infection and death from COVID-19. *See U.S. v. McCarthy*, 2020 WL

1698732, at 5 (D. Conn. Apr. 8, 2020) (collecting cases involving asthma, diabetes, and compromised immune systems); *U.S. v. Jenkins*, 2020 WL 2466911, at 6 (D. Colo. May 8, 2020) (releasing inmate based on age and stroke risk); *U.S. v. Lopez*, 2020 WL 2489746, at 3 (D.N.M. May 14, 2020) (analyzing release based on age, blood pressure, and diabetes); *U.S. v. Bradley*, 2020 WL 3802794 (ED Cal. July 7, 2020) (analyzing release based on diabetes, hypertension and asthma); *U.S. v. Mishler*, 2020 WL 3791590 (ND Cal. July 7, 2020) (analyzing release based on obesity).

Section 3553(a) mandates that the court "impose a sentence sufficient, but not greater than necessary," taking into account the following factors:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for ... the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ...;

(5) any pertinent policy statement ... issued by the Sentencing Commission ...;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Fearful of the current risk to his health in light of the COVID-19 pandemic, Mr. Rudden seeks immediate release under 18 U.S.C. § 3582(c)(1). Thoughtful consideration of the legal standards set forth above, and as detailed below, supports his request.

### b. Exhaustion of Administrative Remedies

On May 6, 2020, defense counsel had a scheduled call with Mr. Rudden along with his counselors from the USP/SCP Leavenworth Prison, Mr. Roderick, and Mr. Dahmer, as well as his case manager, Mr. Bailey. I asked the counselors and case manager how Mr. Rudden could file the request for compassionate release based on his age and his pre-existing medical condition. I was told in no uncertain terms that "Mr. Rudden was not eligible. He had not served 50% of his sentence and the warden would not even consider such a request from Mr. Rudden." I had previously left several voice

messages and had written a letter to Mr. Rudden's case manager, Mr. Bailey, with no response.

On June 5, 2020, an administrative request was filed by Mr. Rudden, through counsel, with the Warden at USP Leavenworth for early release or in-home detention in response to the quickly spreading virus. (Exhibit B, confirmation of electronic request submitted to Warden Hudson at USP Leavenworth). The email informed the warden and his case manager that Mr. Rudden sought compassionate release on the ground that the ongoing COVID-19 pandemic presents a severe risk to Mr. Rudden given his advanced age and medical issues including hypertension and diabetes. The June 5, 2020 email put BOP on notice of the existence and nature of Mr. Rudden's request for compassionate release and triggered the 30-day clock under §3582(c)(1)(A). Pursuant to 28 C.F.R. § 571.61, the Bureau of Prisons processes a request made by another person on behalf of an inmate as the same as an inmate's request. This Court is therefore authorized to grant this motion since more than 30 days have past the request was submitted to Mr. Rudden's warden. See, *United States v. Jenkins*, ---F.Supp.3d---, 2020 WL2466911, at*4 (D. Colo, May 8, 2020) (granting motion for compassionate release 30 days after the defendant's request was submitted to his warden). Pursuant to 18 U.S.C. § 3582(c)(1)(A), the court has jurisdiction to rule on this motion.[6]

---

[6] In an abundance of caution, Mr. Rudden also sent a follow up email to the Warden on August 26, 2020. See, Exhibit C.

### c. Extraordinary and Compelling Circumstances

Mr. Rudden's request for immediate compassionate release is based on the unique danger presented by the COVID-19 virus and his inability as an incarcerated and at-risk person to enact sufficient measures to protect himself.

It goes without saying that the United States is in the midst of a global crisis. On March 11, 2020, the World Health Organization officially classified COVID-19, an illness caused by a novel coronavirus, as a global pandemic. At the end of March, COVID-19 had infected over 132,300 people worldwide, and caused at least 4,954 deaths.[7] That number has increased rapidly and exponentially. As of August 20, 2020, the U.S. alone has reported more than 5.5 million people infected with COVID-19 and 174,137 deaths.[8] There have been more than 22.2 million cases and 793,781 deaths worldwide.[9]

In response to the pandemic, Colorado's Governor Jared Polis declared a State of Emergency and mandated the closure of public places, including schools and government buildings, where unrelated people gather. Later, a stay-at-home order was put in place by Governor Polis and other government officials to help contain the spread of the virus by limiting the activities of its citizens. "Social distancing" has become a well-known phrase that references the precautionary step individuals can take to avoid

---

[7] *Coronavirus Map: Tracking the Spread of the Outbreak*, The New York Times (March 12, 2020), *at* https://nyti.ms/2U4kmud (updating regularly).
[8] *Coronavirus in the U.S.: Latest Map and Case Count*, The New York Times (August 20, 2020) at https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html (updating regularly).
[9] *Coronavirus Map: Tracking the Global Outbreak*, The New York Times (August 20, 2020) at https://www.nytimes.com/interactive/2020/world/coronavirus-maps.html

10

becoming infected with the virus merely by maintaining distance from other.

Once the stay-at-home order lifted, the two things individuals were encouraged to do to avoid spreading the virus were to socially distance themselves and practice heightened hand washing. At present, President Trump, the CDC, and Governor Polis advise or mandate individuals to wear facemasks in any public indoor setting or outside when unable to maintain social distance. Many authorities across the globe, including the CDC and Mayo Clinic, confirm that the combination of facemasks and maintaining social distance is the best way to slow or stop transmission of the virus.[10] Unfortunately for individuals in our prison system, these protective measures are implausible or impossible. *See United States v. Lopez*, No. 19-cr-00429-WJM (D. Colo. Mar. 23, 2020) ("Social distancing is effectively an impossibility in jail."). The risk in prisons could be compared to that for individuals in nursing homes or long-term care facilities. "Correctional facilities—like cruise ships and long-term care facilities—simply are not designed for inmates to practice social distancing." *United States v. Jenkins*, 2020 WL 2466911 at 4 (D. Colo. May 8, 2020). In spite of what may be considered best efforts by the BOP to take action to stop the spread of the virus, more than 11,500 inmates and 1,400 staff have tested positive for COVID-19.[11] Without evidence widespread testing, of which there is none, it is reasonable to conclude that these numbers vastly underrepresent the true spread of the virus through the BOP. As the Court stated in *Jenkins*, "I need not belabor the shocking statistics on the global spread

---

[10] Per https://www.mayoclinic.org/diseases-conditions/coronavirus/in-depth/coronavirus-mask/art-20485449
[11] Per https://www.bop.gov/coronavirus/ (last viewed August 20, 2020).

of COVID-19. But, for certain individuals—those over the age of 60 and those with preexisting conditions, the threat of serious complications or death from contracting COVID-19 is great. *See Groups at Higher Risk for Severe Illness*, Ctrs. for Disease Control & Prevention (CDC), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited May 8, 2020). Intuitively, prison populations are also at a substantial risk. Laura Hawks, Steffie Woolhandler, and Danny McCormick, *COVID-19 in Prisons and Jails in the United States*, JAMA Internal Med. (Apr. 28, 2020), https://jamanetwork.com/journals/jamainternalmedicine/fullarticle/2765271. ("Prior viral epidemics have wrought havoc in carceral settings .... When [jails and prisons] are unable to adhere to measures needed to contain and mitigate a viral epidemic, incarcerated persons, staff, and the wider community are endangered.").''

Mr. Rudden is an inmate at USP Leavenworth, Satellite Prison Camp, which is connected to the USP Leavenworth. The Leavenworth facility is one of the oldest federal prisons in the country built in the early 1900s. The facility is out of date and the infrastructure is unprepared to handle a pandemic. The inmates currently held in Leavenworth will be one of the last generations before a new $350 million detention facility is built updating the facility to 21st Century standards[12]. Currently, the main prison houses approximately 1,574 inmates and employs several hundred staff who have contact with inmates. Mr. Rudden, who is housed in the Satellite Prison located

---

[12] https://www.kctv5.com/news/356-million-prison-announced-in-leavenworth/article_ae171bc4-e330-11ea-b656-2bc8535ad0de.html

12

next to the USP, has no way to practice the social distancing and sheltered protective measures that promise some hope of surviving the consequences of infection. Staff and inmates have close and daily contact, and inmates sleep, eat, and use the toilet within feet of one another. In these circumstances, social distancing is literally impossible.[13] The Satellite Prison Camp has 424 beds. Since COVID has hit the prison, numerous inmates have been released and the Leavenworth Satellite prison currently houses approximately 233 inmates. The camp has open dormitory style housing and Mr. Rudden has 24 inmates in his dormitory. It is unsurprising that as of August 20, 2020, there were seven active cases of COVID-19 among the inmate population at USP Leavenworth and three among the staff.[14] The total number of confirmed cases and the overall percentage of inmates who have been tested at USP Leavenworth Prison Satellite Camp is unknown. Regardless, the mere presence of COVID-19 at USP Leavenworth represents a serious and undeniable threat to Mr. Rudden in light of given his advanced age and underlying medical conditions.

      Certain underlying medical conditions, including those suffered by Mr. Rudden, significantly increase the likelihood of serious illness or death upon contracting COVID-19. Mr. Rudden suffers from type 2 diabetes mellitus and hypertension. Hypertension and type 2 diabetes are two of the most common comorbidities with COVID-19 deaths.[15] Both conditions increase the likelihood that Mr. Rudden would suffer more

---

[13] *See* Kaste, Martin, *Prisons and Jails Worry About Becoming Coronavirus 'Incubators'*, NPR (Mar. 13, 2020) https://www.npr.org/2020/03/13/815002735/prisons-and-jails-worry-about-becoming-coronavirus-incubators.
[14] Per https://www.bop.gov/coronavirus/
[15] *See, e.g.,* Katelyn Newman, Study: High Blood Pressure, Obesity Are Most Common Comorbidities in COVID-

severe symptoms if he contracted COVID-19.[16] Since his incarceration, Mr. Rudden has lost 45 pounds and has been experiencing numbness and tingling in his feet. Mr. Rudden is the second oldest prisoner remaining at the Leavenworth Prison Camp.

The commentary section of U.S.S.G. § 1B1.13 defines extraordinary and compelling in pertinent part as suffering from a medical condition, including terminal illness or another serious medical condition that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. U.S.S.G. § 1B1.13 application note 1(A)(ii). Mr. Rudden's type 2 diabetes and hypertension are serious medical conditions that persists despite medication and mitigation efforts by Mr. Rudden. The threat to his health caused by exposure to COVID-19 is greater than normal due to his underlying medical conditions.

Other courts have recognized hypertension and type 2 diabetes as a basis for granting compassionate relief. *See, e.g., United States v. Crawford*, No. 2:18-cr-00075-3, 2020 WL 3869480 (S.D. Oh. July 8, 2020); *United States v. Grubbs*, No. CR16-228-TSZ, 2020 WL 3839619 (W.D. Wash. July 8, 2020); *United States v. Crawford,* No. 2:18-cr-00075-3, 2020 WL 3869480 (SD Oh. July 8, 2020)*; United States v. Bradley*,

---

19 Patients (April 22, 2020), at https://www.usnews.com/news/healthiest-communities/articles/2020-04-22/obesity-hypertension-most-common-comorbidities-for-coronavirus-patients (last visited June 4, 2020); *see also, e.g., United States v. Ullings*, 2020 WL 2394096, at *4 n7 (discussing declaration from doctor, citing to Mayo Clinic Proceedings that notes a report issued by the Italian Ministry of Health showing "the most common comorbidities in a cohort of 481 patients who died with COVID-19 were hypertension (74%), diabetes (34%), ischemic cardiopathy (30%), and atrial fibrillation (22%)).

[16] Per https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

14-CR-00293-KJM, 2020 WL 3802794 (E.D. Cal. July 7, 2020); *United States v. Erickson*, No. 18-245(3) (DWF/HB), 2020 WL 3802823 (D. Minn. July 7, 2020); *United States v. Vo*, 15-CR-00310-BLF-2, 2020 WL 2300101 (N.D. Cal. May 7, 2020); *United States v. Reid*, 3:17-cr-001750-CRB-2, 2020 WL 2128855 (N.D. Cal. May 5, 2020); *United States v. Pabon*, 2:17-cr-00165-AB-1, 2020 WL 2112265 (E.D. Penn. May 4, 2020); *United States v. Guzman Soto*, 1:18-cr-10086-IT-1, 2020 WL 2104787 (D. Mass. May 1, 2020); *United States v. Etzel*, 6:17-CR-00001-AA, 2020 WL 2096423 (D. Or. May 1, 2020); *United States v. Lacy*, 3:15-cr-30038-SEM-TSH-1, 2020 WL 2093363 (C.D. Ill. May 1, 2020); *United States v. Ardila*, 3:03-cr-00264-SRU-1, 2020 WL 2097736 (D. Conn. May 1, 2020); *United States v. Rivera*, 1:86-cr-01124-JFK-4, 2020 WL 2094094 (S.D. N.Y. May 1, 2020); *United States v. Pinkerton*, 15-CR-30045-3, 2020 WL 2083968 (C.D. Ill. Apr. 30, 2020); *United States v. Saad*, 2:16-cr-20197-DPH-MKM-1, 2020 WL 2065476 (E.D. Mich. Apr. 29, 2020); *United States v. Brown*, 4:05-cr-00227-RP-CFB-1, 2020 WL 2091802 (S.D. Iowa Apr. 29, 2020); *United States v. Bertrand*, 3:00-cr-00012-LC-1, 2020 WL 2179387 (N.D. Fla. Apr. 29, 2020); *United States v. Musumeci*, 1:07-cr-00402-RMB-1, Dkt. No. 58 (S.D. N.Y. Apr. 28, 2020); *United States v. Handy*, PJM 04-0559, 2020 WL 2041666 (D. Md. Apr. 28, 2020); *United States v. Harper*, 7:18-cr-00025-EKD-JCH-1, 2020 WL 2046381 (W.D. Va. Apr. 28, 2020); *United States v. Robinson*, 3:18-cr-00597-RS-1, 2020 WL 1982872 (N.D. Cal. Apr. 27, 2020); *United States v. Sanchez*, 1:95-cr-00421-MGC-1, Dkt. No. 290 (S.D. Fla. Apr. 27, 2020); *United States v. Dillard*, 1:15-cr-170-SAB, Dkt. No. 71 (D.

Idaho Apr. 27, 2020); *United States v. Williams*, 3:17-CR-121-(VAB); -1, 2020 WL 1974372 (D. Conn. Apr. 24, 2020); *United States v. Coles*, 2:00-cr-20051-SEM-TSH-1, 2020 WL 1976296 (C.D. Ill. Apr. 24, 2020); *United States v. Jackson*, 4:14-CR-00576, 2020 WL 1955402 (S.D. Tex. Apr. 23, 2020); *United States v. Logan*, 1:12-cr-00307-LEK-1, Dkt. No. 179 (N.D. N.Y. Apr. 22, 2020); *United States v. Bess*, 16-CR-156, 2020 WL 1940809 (W.D.N.Y. Apr. 22, 2020); *United States v. Curtis*, 1:03-cr-00533-BAH-1, 2020 WL 1935543 (D. D.C. Apr. 22, 2020); *United States v. Rodriguez*, 2:03-cr-00271-AB-1, 2020 WL 1627331 (E.D. Pa. April 1, 2020).

Moreover, Mr. Rudden is 73 years old, which renders him more susceptible to the dangers of COVID-19. For individuals like Mr. Rudden—those over the age of 60 with preexisting conditions, the threat of serious complications or death from contracting COVID-19 is grave.[17]

Furthermore, the Court is free to find that extraordinary and compelling reasons exist, even if the defendant does not fit any § 1B1.13 category. *See United States v. Redd,* No. 1:97-cr-00006, 2020 WL 1248493, at 6-7 (E.D. Va. March 16, 2020) (finding that "Congress' dramatic reduction under the First Step Act of the penalties he received on his three 'stacked' § 924(c) convictions" was an extraordinary and compelling reason to justify relief). Nevertheless, the unprecedented COVID-19 pandemic coupled with Mr. Rudden's age and serious medical condition, which places him at greater risk of

---

[17] Per https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last updated July 17, 2020).

complications or death if he contracts the virus, serves as an extraordinary and compelling reason to justify the requested relief.

### d. Analysis of 18 U.S.C. § 3553(a) Factors

A court must consider the 18 U.S.C. § 3553(a) sentencing factors to the extent they are applicable in reducing any sentence, and any reduction of a sentence that a court orders must also be consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). Post-sentencing conduct is relevant to this analysis. *See Pepper v. United States*, 562 U.S. 476 (2011).

The nature of Mr. Rudden's offense is summarized in the PSR. While undeniably serious, the type of conduct in which he engaged can be effectively mitigated in the community in the future by strictly limiting and monitoring his professional activities while on supervised release. It is worth noting that Mr. Rudden accepted responsibility for his offense and entered a guilty plea timely. *See* PSR at pg. 10, ¶ 54-55.

Consideration of other § 3553(a) factors, "to the extent that they are applicable," weigh in favor of granting Mr. Rudden compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A). First, Mr. Rudden is a first-time offender who has no history of violent conduct. *See* 18 U.S.C.§ 3553(a)(l). There is little to no likelihood that he will commit another crime, especially if he will be in home confinement and subject to GPS monitoring and supervised release. *See* 18 U.S.C. § 3553(a)(2)(B)-(C). Granting Mr. Rudden compassionate release based on the COVID-19 pandemic would not send a message that white-collar crime pays, merely that the crime committed in this case does

not warrant a death sentence, which is the risk should he remain incarcerated and unable to protect himself from contracting COVID-19. *See* 18 U.S.C.§ 3553(a)(2)(B). Mr. Rudden has faced and continues to face serious consequences, including more than one year of incarceration, substantial financial consequences, civil penalties and loss of reputation, business relationships and friendships, all as a result of his conduct in this case.

The § 3553(a)(2)(A) factor concerning "the need for the sentence imposed … to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" is largely overcome by the unreasonable threat of seriousness illness and death to Mr. Rudden presented by the confluence of his incarceration, medical conditions, and threat of contracting COVID-19. Resentencing Mr. Rudden to serve the remainder of his prison sentence in home confinement or on an extended period of supervised release, with GPS monitoring and other relevant conditions, would provide him with a punishment that is "sufficient, but not greater than necessary" given his risk of seriousness illness or death from a COVID-19 infection.

### e. Mr. Rudden is Not a Danger to Others

Mr. Rudden's immediate release from prison would not "pose a danger to the safety of any other person or the community." *See BOP Program Statement* 5050.50, at 2 (Jan. 17, 2019). In spite of his advanced age, Mr. Rudden's criminal conviction represents his first contact with any criminal justice system. *See* PSR at pg. 10, ¶ 57-58.

While his offense was certainly serious, it was non-violent. He has had no disciplinary infractions since being placed into custody more than one year ago. There is no evidence that Mr. Rudden is a danger to the public now or in the future. Certainly, as described above, he can be adequately supervised in the community.

This argument is bolstered by the intricacy of Mr. Rudden's release plan: He would be picked up at the Leavenworth Camp by his sisters, Eileen Sienkiewicz, and Mary Ann O'Toole, in a 2016 Acura MDX SUV. They will be wearing masks and gloves and will provide Mr. Rudden with a mask and gloves. The seating in the SUV allows for Mr. Rudden to be seated 6 feet away from the other passengers. Once he arrives in Colorado, he will self-quarantine and reside with his daughter Tammy Krause and her partner, Blaire Hanniman at their home in Parker, Colorado. The home has a separate basement bedroom and bathroom and has a separate entrance. Ms. Krause and her partner are well-apprised of the nature of this case, and Ms. Krause was interviewed by the Probation Department as part of the PSR process. *See* PSR at pgs. 11-12. She continues to support her father and confirms the same for many of his remaining friends and family members.

### III.   CONCLUSION

For these reasons, defense counsel respectfully requests this Court grant Mr. Rudden's immediate compassionate release or, in the alternative, schedule a hearing in which the Court can explore and question any unresolved concerns related to this request.

DATED at Denver, Colorado this 4th day of September, 2020.

                                                s/ Colette Tvedt
                                                Colette Tvedt
                                                The Law Firm of Colette Tvedt LLC
                                                Attorney Registration 49751
                                                1600 Stout Street, Suite 1400
                                                Denver, Colorado   80202
                                                (303) 577-1633

## CERTIFICATE OF SERVICE

     I hereby certify that on September 4, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                                                s/ Leni Charles, Legal Assistant