IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 18-cr-00508-CMA

UNITED STATES OF AMERICA,

Plaintiff,

v.

DANIEL B. RUDDEN,

Defendant.

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE (ECF 77)**

The United States of America files this response to defendant's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A). (ECF 77). The defendant argues that he qualifies for compassionate release after serving just **15 months of his 121-month sentence (14 percent)**[1] because he suffers from Type 2 diabetes and hypertension. *Id.* at 3.

## BACKGROUND

On December 7, 2018, the defendant pled guilty to one count of Mail Fraud, in violation of 18 U.S.C. § 1341. Over the course of several years, the defendant ran a Ponzi scheme whereby he convinced investors to invest in his business, Financial Visions (FV), Inc. FV's business model was based on taking assignments on life insurance policies in order to pay for funeral expenses. When a family experienced the death of a family member and could not afford the funeral expenses, FV would pay the funeral home and/or

---

[1] This calculation includes the defendant's anticipated good conduct time credit. His projected release date is January 21, 2028.

1

cemetery for those expenses and take an assignment on the deceased's life insurance policy. When the insurance company paid the life insurance proceeds, it would pay FV directly for the funeral expenses that FV had fronted. FV charged the family of the deceased a 4 to 5 percent fee for this service.

Individuals who decided to invest in FV received a Promissory Note signed by the defendant. Through the Promissory Note, the defendant promised to pay back to the investor the principal amount invested plus interest. Most investors were promised 12% simple interest per year on their principal amount invested, to be paid on a quarterly basis.

Over the years, the defendant continued to take in money from new investors, but the number of funeral homes using FV's services did not continue to grow at a commensurate rate. As a result, FV owed investors more and more in interest payments while FV was not making a profit sufficient to sustain such payments. The defendant began using later investors' funds to make the interest payments to earlier investors.

The defendant's Ponzi scheme ended up costing over 175 investors approximately $20 million. More than 65 victims lost more than $100,000 each, and a few victims lost over $1 million. Many had invested the bulk of their life savings with the defendant, and lived entirely off the quarterly "interest payments" from FV, plus social security or disability payments. Numerous investors were elderly and had no other means of earning income. While they placed their trust in the defendant, the defendant took their money knowing that he was operating a Ponzi scheme – conduct that took place by his account over *seven years* and caused the staggering loss of approximately *$20 million*. A $20 million loss for approximately 175 victims is a reflection of how much each individual victim suffered, and also of how much trust victims placed in the defendant when they gave him

such large sums of money. The victim impact statements detail the depression and shock victims experienced after learning about the defendant's actions.

The Court heard the heart-wrenching statements from many of the defendant's victims at the sentencing hearing. At the conclusion of that hearing, the Court remanded the defendant and ordered that he serve 121 months in prison. ECF 61, 68. The defendant was also ordered to serve three years of supervised release and pay $19,919,668.67 in restitution.  ECF 68.

While the government acknowledges that the instant offense is the defendant's only criminal conviction, it is notable that the defendant began the Ponzi scheme when he was 65. The Court took into account the defendant's advanced age (72) when it sentenced him to121 months in prison. The advent of COVID-19 does not justify this defendant's release to home confinement after serving just **14 percent** of his sentence.

## **ARGUMENT**

While the defendant's Type 2 diabetes places him at an increased risk of severe illness from COVID-19,[2] the Court should nonetheless deny the defendant's request for compassionate release because 1) the Bureau of Prisons, and specifically, the United States Penitentiary-Leavenworth,[3] has taken appropriate measures to mitigate the risk of COVID-19; and 2) releasing the defendant from prison after serving less than **14 percent** of his original sentence would undermine the sentencing goals set forth under 18 U.S.C. § 3553(a).

---

[2] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.

[3] The defendant is housed at the Satellite Camp of USP-Leavenworth. ECF 77 at 12.

I. **Exhaustion of Administrative Remedies**

As required by the First Step Act, 18 U.S.C. § 3582(c)(1)(A), the defendant requested, through counsel, compassionate release from the Warden of his facility on June 5, 2020. ECF 77 at Exhibit B. Thirty days have elapsed since the submission of that email. Accordingly, the defendant has complied with the provisions of 18 U.S.C. § 3582(c)(1)(A).

II. **BOP Response to COVID-19 and Facts Specific to USP-Leavenworth**

Attached to this filing as Attachment A is the Declaration of John Brantley, Executive Assistant of USP-Leavenworth. In his Declaration, Mr. Brantley details the Bureau of Prisons (BOP)'s nationwide response to COVID-19 and the measures BOP had taken to combat this virus in all BOP facilities. Attachment A, Pages 2-5.

In addition, Mr. Brantley's Declaration contains eight pages that detail the specific steps taken at USP-Leavenworth to combat the virus at that facility. *Id.* at Pages 5-12.

On Page 5, Paragraph II. 6, Mr. Brantley notes that "USP Leavenworth is a medium security U.S. Penitentiary with an adjacent and physically separate minimum security satellite camp. At Leavenworth, inmates in the Camp have different custody and security classifications than inmates in the USP and these two groups do not have physical contact with each other." As noted, the defendant is housed in the Satellite Camp. ECF 77 at 12.

On the last page of Mr. Brantley's Declaration he notes the number of staff at USP-Leavenworth who have tested positive for COVID-19 (5) and the number of inmates (194). Attachment A, Page 12 at Paragraphs ee and ff (citing https://www.bop.gov/coronavirus/.) He notes that as of today's date, **no inmates** in the Satellite Camp (where the defendant is housed), have tested positive for COVID-19. *Id.*

4

at Para. ff.

In summary, the measures taken by BOP in general, and at USP-Leavenworth specifically, have been effective in maintaining the safety of inmates and staff at the facility where the defendant is housed.

### III.     Legal Standard for Compassionate Release

A court may grant a defendant's motion for a reduction of sentence "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to show circumstances meeting the test for compassionate release. *United States v. Jones,* 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019) (unpublished).

As the terminology in the statute makes clear, compassionate release is "rare" and "extraordinary." *United States v. Willis*, 382 F.Supp.3d 1185, 1188 (D.N.M. June 7, 2019) (citations omitted).  Indeed, "[t]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia,* 954 F.3d 594, 597 (3rd Cir. 2020).

The Sentencing Commission has issued a policy statement addressing reduction of sentences under § 3582(c)(1)(A). As relevant here, the policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;"

5

(ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with this policy statement." USSG § 1B1.13.[4]

The Sentencing Commission's policy statement provides four categories of "extraordinary and compelling reasons" that warrant a reduction in sentence. First, a defendant with a terminal medical condition or who is suffering from a "serious medical condition" that "substantially diminishes" the defendant's ability to provide self-care and from which he is not expected to recover may be released. U.S.S.G. § 1B1.13 cmt. 1(A). Second, a defendant who is at least 65 years old, is experiencing serious physical or mental deterioration, and has served at least 10 years or 75% of his sentence may be released. *Id.* cmt. 1(B). Third, family circumstances may also warrant compassionate release in the event of "the death or incapacitation of the caregiver of the defendant's minor child or minor children [or the] incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 cmt. 1(C). Finally, the note recognizes the possibility that BOP could identify other grounds that amount to "extraordinary and compelling reasons." USSG § 1B1.13, cmt. n.1(D).

https://www.bop.gov/policy/progstat/5050_050_EN.pdf.

---

[4] The policy statement refers only to motions filed by the BOP Director. That is because the policy statement was last amended on November 1, 2018, and until the enactment of the First Step Act on December 21, 2018, defendants were not entitled to file motions under § 3582(c). *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239; *cf.* 18 U.S.C. § 3582(c) (2012). In light of the statutory command that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission," § 3582(c)(1)(A)(ii), and the lack of any plausible reason to treat motions filed by defendants differently from motions filed by BOP, the policy statement applies to motions filed by defendants as well.

IV.     Application

Currently, the Department of Justice is taking the position that the presence of one of the COVID-19 risk factors that are specifically enumerated by the CDC and that is confirmed by BOP medical records meets the threshold requirement of presenting an "extraordinary and compelling" reason under the First Step Act.[5] The BOP's medical records confirm the defendant's Type 2 diabetes diagnosis.  ECF 77 at Exhibit A.[6]  The CDD guidance also states that hypertension **might** pose an increased risk for severe illness from COVID-19.[7] Thus, the government does not dispute that the defendant's diabetes diagnosis currently satisfies this threshold requirement. However, the Department of Justice is not taking the position that the mere satisfaction of this threshold requirement should result in the granting of compassionate release. Instead, the Court should balance the precautions that the BOP is taking to mitigate the risk of COVID-19, the danger of releasing the defendant to the community, and the sentencing factors set forth under 18 U.S.C. § 3553(a).

---

[5] The law does not require the Court agree with the Department of Justice's position. *See e.g., United States v. Korn,* 2020 WL 1808213, at *6-8 (W.D.N.Y. Apr. 9, 2020) (coronary artery disease did not amount to an extraordinary and compelling reason); *United States v. Roberts*, 2020 WL 1700032, at *2 (S.D.N.Y. Apr. 8, 2020) (denying to compassionately release HIV-positive defendant housed at New York City's Metropolitan Correctional Center (MCC), which had 10 confirmed COVID-19 cases – four inmates and six staff – as of the date of the court's opinion); *United States v. Hays*, 2020 WL 1698778 (S.D. Ala. Apr. 7, 2020) (holding concerns about contracting COVID-19 based on defendant's age, anemia, and allegedly unsanitary conditions at her facility were not extraordinary and compelling reasons justifying her release); *United States v. Clark*, 2020 WL 1557397, at *1 & *4 (M.D. La. Apr. 1, 2020) (defendant's high blood pressure and high cholesterol are not serious medical conditions and "the fear of contracting a communicable disease" proves insufficient to justify a sentence modification).
[6] Notably, the defendant was not diagnosed with diabetes, or hypertension, until examined by the BOP.  ECF 77 at n. 3 and Exhibit A.
[7] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.

The decision to grant or deny a request for reduction in sentence remains discretionary. *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."). Even where defendants have shown the presence of COVID-19 risk factors, courts have held that such factors do not mean the inmate is automatically entitled to a reduction in sentence. This is true even for defendants residing at facilities with confirmed COVID-19 cases.

For example, in *United States v. Korn*, the court denied the defendant's request for compassionate release notwithstanding the fact that (1) at least 40 COVID-19 cases had already been confirmed at his facility (Butner), and (2) the defendant suffers from a serious heart condition that made him more susceptible to COVID-19. *United States v. Korn*, No. 15-CR-81S & 11—CR-384S, 2020 WL 1808213, at *6-8 (W.D.N.Y. Apr. 9, 2020) (noting court had already considered defendant's medical condition when it imposed his sentence and when it denied his motion for a sentence reduction under 28 U.S.C. § 2255). In *Korn*, the court held that although "Korn's medical conditions may place him at increased risk of contracting and succumbing to COVID-19 … the mere possibility of contracting a communicable disease such as COVID-19, without any showing that [BOP] will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme." *Id.* at *6; *see also*, *e.g.*, *United States v. Roberts,* No. 18-CR-528-5 (JMF), 2020 WL 1700032, at *2 (S.D.N.Y. Apr. 8, 2020) (stating appropriate relief for defendant with HIV housed at MCC was a temporary release from custody, not compassionate release); *United States v. Hays*, No. 18-00088-KD-N, 2020 WL 1698778 (S.D. Ala. Apr. 7, 2020) (holding concerns about contracting COVID-19 based on

defendant's age, medical condition, and allegedly unsanitary conditions at her facility, FCI Aliceville, were not extraordinary and compelling reasons justifying her release); *United States v. Credidio,* No. 19 Cr. 111 (PAE), 2020 WL 1644010, at *1 (S.D.N.Y. Apr. 2, 2020) (noting at least four other inmates had COVID-19, but still declining to release defendant from MCC); *United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397 at *1, 4 (M.D. La. Apr. 1, 2020) ("the fear of contracting a communicable disease" proves insufficient to justify a sentence modification for 67-year-old inmate with high blood pressure, high cholesterol, and sleep apnea).

In sum, to release the defendant under the circumstances would be to sanction the release of untold numbers of other federal prisoners who are in similar circumstances.

**V.      The Court Should Deny Defendant's Motion Because Granting his Release Would Undermine the Goals of Criminal Sentencing.**

The statute requires the Court to consider whether releasing the defendant is consistent with the factors set forth at 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A). Relief under § 3582 is a discretionary remedy that should balance the risks of COVID against the likelihood that releasing the defendant will undermine the goals of criminal justice. Order Denying Motion for Compassionate Release, *United States v. McClaflin*, 1:17-cr-00168-CMA, ECF No. 129 (July 20, 2020); *United States v. Batista,* No. 19-cr-2-JFK, 2020 WL 3249233 (S.D.N.Y. June 16, 2020). Here, the Court should deny the defendant's motion because BOP has mitigated the risks and because the sentencing factors under § 3553(a) counsel against relief for this defendant who has only served **approximately 14%** of his sentence.

9

### 1. Factors set forth at 18 U.S.C. § 3553(a) weigh strongly in favor of denying the defendant's motion.

Considering the factors under Section 3553(a), the defendant's motion should also be rejected. For seven years, the defendant engaged in an elaborate Ponzi scheme and defrauded over 175 people out of approximately $20 million. The harm he caused to these individuals was devastating.  The Court weighed all of the § 3553(a) sentencing factors and determined that a 121-month sentence was sufficient, but not greater than necessary for this, at the time, 72-year old defendant. The advent of COVID does not change that analysis, and does not justify reducing this defendant's sentence of imprisonment by approximately **86 percent.**

The facts of this case are very similar to those in *United States v. McClaflin,* 1:17-cr-00168-CMA, 2020 WL 4057587 (D. Colo. July 20, 2020). There, McClaflin was convicted of operating a residential Ponzi scheme that defrauded investors of more than $14.5 million. She was sentenced to 96 months in prison.  She filed a motion for compassionate release after serving only **14 percent** of her sentence. The Court held that even assuming McClaflin's health issues and the COVID-19 pandemic constituted "extraordinary and compelling reasons" to reduce her sentence, "application of the § 3553(a) sentencing factors outweighs any such reduction."  *Id.* at *2. The Court held that reducing McClaflin's sentence by over **85 percent** "would not only fail to promote respect for the law – it would make a mockery of it." *Id.*

In reaching this conclusion, the Court was persuaded by the reasoning of the Southern District of New York in *United States v. Israel,* No. 05 CR 1039 (CM), 2019 WL 6702522 (S.D. N.Y. Dec. 9, 2019).  The defendant in *Israel* operated a Ponzi scheme as well, defrauding investors out of millions of dollars. He filed a motion for compassionate release after serving 11 years of his 20-year sentence. The court denied

10

the motion, finding that to grant such relief in light of the seriousness of the crime and the amount of the fraud would do "nothing to promote respect for the law. It simply reinforces the belief that there is one law for the white-collar criminal and another law altogether for the ghetto dweller or the drug dealer." *Id.* at \*\*9-10.

This Court reached a similar result in *United States v. Bowen*, 18-cr-00254, where it denied fraudster Bowen's request for compassionate release after serving less than **15 percent** of his sentence. ECF 129; *see also United States v. Edington,* No. 19-cr-00174-REB-1, 2020 WL 2744140, at \*4 (D. Colo. May 27, 2020) (rejecting a white collar defendant's motion for compassionate release, finding unpersuasive defendant's arguments that she had not had *"*any disciplinary actions," while in prison and that her conviction was "non-violent"; on the issue of dangerousness the court held, "while it is true that her offenses are not crimes of violence and do not involve narcotics, the concept of what constitutes a danger to the community 'may, at least in some cases, encompass pecuniary or economic harm.'" (citing cases)).

## VI.   Conclusion

Accordingly, the factors set forth at 18 U.S.C. § 3553(a) outweigh any "extraordinary and compelling reasons" presented by the current pandemic. By releasing the defendant now, the Court would not promote respect for the law, provide just punishment, or afford adequate general or specific deterrence. It would also undermine the public's confidence in the criminal justice system. Instead, it would be granting the defendant a significant reduction in sentence based on unquantified risk that he might face hospitalization *if* infected with COVID-19.

Compassionate release is an extraordinary and rare remedy that the defendant has not and cannot meet his burden to justify. Accordingly, the United States respectfully submits that the Court should deny the defendant's motion.[8]

Respectfully submitted,

JASON R. DUNN
United States Attorney

By: *s/ Martha A. Paluch*
MARTHA A. PALUCH
REBECCA S. WEBER
Assistant United States Attorneys
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Email: Martha.paluch@usdoj.gov
Rebecca.weber@usdoj.gov
Attorneys for the United States

---

[8] If the Court is inclined to grant this motion, the government would request sufficient time to contact the victims in this case and advise the Court as to their position(s) on this motion, or to hold a hearing so that their position(s) can be presented.

12

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 16th day of September, 2020, I electronically filed the foregoing **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE (ECF 77)** with the Clerk of the Court using the CM/ECF system that will send notification of such filing to all parties of record.

      By: *s/Martha A. Paluch*
      MARTHA A. PALUCH
      Assistant United States Attorney
      United States Attorney's Office
      1801 California Street, Suite 1600
      Denver, Colorado 80202
      Telephone: (303) 454-0100
      Email: Martha.paluch@usdoj.gov
      Attorney for the United States