IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Criminal Case No. 18-cr-00508-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. DANIEL B. RUDDEN,

    Defendant.

___

**ORDER**
___

The matters before the Court are defendant Daniel B. Rudden's Motion to Reduce Sentence Pursuant to Amendment 821 of the U.S. Sentencing Guidelines and Request for the Appointment of a Federal Defender [Docket No. 106] and Request for Appointment of New CJA Counsel [Docket No. 111].[1] The government responded to Mr. Rudden's motion for a sentence reduction. Docket No. 110.

On December 7, 2018, Mr. Rudden pled guilty to one count of wire fraud, in violation of 18 U.S.C. § 1343. Docket No. 32. On June 20, 2019, Judge Christine M. Arguello sentenced Mr. Rudden to 121 months of imprisonment followed by three years of supervised release. Docket No. 60; Docket No. 61 at 2-3. Judge Arguello ordered Mr. Rudden to pay restitution in the amount of $19,609,905.21. Docket No. 61 at 6. Judge Arguello found the total offense level to be 30 and determined Mr. Rudden's

---

[1] Because Mr. Rudden is proceeding pro se, the Court construes his filings liberally without serving as his advocate. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Criminal History Category to be I, which resulted in a sentencing range of 97 to 121 months imprisonment. Docket No. 62 at 1. Mr. Rudden is currently incarcerated at Phoenix RRM, a residential reentry management field office in Arizona. *See* Federal Bureau of Prisons, *Inmate Locator*, https://www.bop.gov/inmateloc/. Mr. Rudden's projected release date is January 1, 2027. *Id*.

**A. Motion for a Reduction in Sentence**

On March 18, 2024, Mr. Rudden filed a pro se motion for a reduction in his sentence based on Amendment 821 to the Sentencing Guidelines. Docket No. 106. The government filed a response opposing Mr. Rudden's motion. Docket No. 110.

Generally, a federal court may not alter a term of imprisonment once it has been imposed. *See Dillon v. United States*, 560 U.S. 817, 824 (2010); 18 U.S.C. § 3582(c). However, under 18 U.S.C. § 3582(c)(2), a court may reduce a defendant's sentence when the defendant "has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o)." 18 U.S.C. § 3582(c)(2). Section 3582(c)(2) "establishes a two-step inquiry." *Dillon*, 560 U.S. at 826. "At step one, § 3582(c)(2) requires the court to follow the Commission's instructions in [USSG] § 1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Id.* at 827. "At step two of the inquiry, § 3582(c)(2) instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." *Id.*

On November 1, 2023, the Sentencing Commission adopted Amendment 821 to the Sentencing Guidelines in order to "make[ ] targeted changes to reduce the impact of providing additional criminal history points for offenders under a criminal justice sentence (commonly known as "status points"), to reduce recommended guideline ranges for offenders with zero criminal history points under the guidelines ("zero-point offenders"), and to recognize the changing legal landscape as it pertains to simple possession of marihuana offenses." *See* U.S.S.G., Supp. to App. C., Amend. 821 (U.S. Sentencing Comm'n 2023). Before November 2023, the Sentencing Guidelines assessed two criminal history points, known as "status points," for an offense committed "while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." *United States v. Espinoza-Pena*, 2024 WL 1675672, at *1 (D.N.M. Apr. 18, 2024) (citing U.S.S.G. § 4A1.1(d) (2022)). In Part A of Amendment 821, the Sentencing Commission altered the "status points" provision such that a person who has seven or more criminal history points now receives only one additional "status point," instead of two. *Id.* In addition, a person with six or fewer criminal history points now receives no status points. *Id.*

"Part B of Amendment 821 creates a new guideline, § 4C1.1, which provides for a decrease of two offense levels for 'Zero-Point Offenders.'" *United States v. Espinoza*, No. 21-cr-00250-WJM, 2024 WL 4108576, at *1 (D. Colo. Sept. 6, 2024). Under this provision, defendants are "eligible for a decrease of two offense levels if they are a 'Zero-Point Offender,' *i.e.*, a defendant with no criminal history points." *Id.* To be eligible, a defendant must also meet the following criteria:

> (1) the defendant did not receive any criminal history points from Chapter Four, Part A;

>  (2) the defendant did not receive an adjustment under § 3A1.4 (Terrorism);
>  (3) the defendant did not use violence or credible threats of violence in connection with the offense;
>  (4) the offense did not result in death or serious bodily injury;
>  (5) the instant offense of conviction is not a sex offense;
>  (6) the defendant did not personally cause substantial financial hardship;
>  (7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>  (8) the instant offense of conviction is not covered by § 2H1.1 (Offenses Involving Individual Rights);
>  (9) the defendant did not receive an adjustment under § 3A1.1 (Hate Crime Motivation or Vulnerable Victim) or § 3A1.5 (Serious Human Rights Offense); and
>  (10) the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848.

*Id.* at *1-2 (citing U.S.S.G. § 4C1.1(a)). Amendment 821 applies retroactively. *United States v. Stites*, 2024 WL 3535120, at *1 (D. Kan. July 24, 2024).

Mr. Rudden maintains that Part B of Amendment 821 altered his sentencing guideline range by reducing the offense level by two levels. *See* Docket No. 106 at 2-3, ¶¶ 4-6. The government states that, while Mr. Rudden had no criminal history points at the time of his sentencing, Mr. Rudden is not eligible for a sentence reduction because Mr. Rudden "personally caused substantial financial hardships to numerous victims in the commission of his instant offenses." Docket No. 110 at 3 (citing U.S.S.G. § 4C1.1(a)(6)) (internal quotations omitted).

"In determining whether the defendant's acts or omissions resulted in 'substantial financial hardship' to a victim, the court shall consider, among other things, the non-exhaustive list of factors provided in Application Note 4(F) of the Commentary to § 2B1.1." U.S.S.G. § 4C1.1(b)(3). These factors include whether the offense at issue resulted in victims:

>  (i) becoming insolvent;

>> (ii) filing for bankruptcy under the Bankruptcy Code (title 11, United States Code);
>
> (iii) suffering substantial loss of a retirement, education, or other savings or investment fund;
>
> (iv) making substantial changes to his or her employment, such as postponing his or her retirement plans;
>
> (v) making substantial changes to his or her living arrangements, such as relocating to a less expensive home; and
>
> (vi) suffering substantial harm to his or her ability to obtain credit.

U.S.S.G. § 2B1.1 n.4F.

The Court finds that Mr. Rudden is not eligible for the sentence reduction he seeks because he "personally cause[d] substantial financial hardship." U.S.S.G. § 4C1.1(a)(6). At sentencing, Judge Arguello accepted the Presentence Investigation Report ("PSIR"). Docket No. 62 at 1. In the PSIR, the probation officer "determined that the offense resulted in substantial financial hardship to five or more victims (but less than 25 victims)" that resulted in "an increase of 4 levels." Docket No. 51 at 10, ¶ 48. The PSIR states that Mr. Rudden's victims checked boxes on their Victim Impact Statements that indicated that they experienced one or more of the circumstances enumerated in U.S.S.G. § 2B1.1 n.4F. *Id.*; *see also* Docket No. 51-3. For instance, a victim stated that Mr. Rudden's offense resulted in the victim's loss of his "grandchildren's college fund and his own retirement" that took "20 years to accumulate." Docket No. 51 at 7, ¶ 29. Another victim stated that, as a result of the defendant's offense, she and her husband lost all of their savings, she could not afford knee replacement surgery, and that "their losses have been 'a disaster.'" *Id.*, ¶ 30. Another victim indicated that he lost "95 percent of his family's savings" and that upon learning of the fraud he was "depressed and felt like running his bike into a brick wall or jumping off a cliff." *Id.* at 8, ¶ 34. As a result of Mr. Rudden's offense, another victim

5

"believes she will now never be able to retire and makes it 'paycheck by paycheck.'" *Id.*, ¶ 39; *see United States v. Hanson,* 124 F.4th 1013, 1018 (6th Cir. 2025) (holding that "the district court made sufficiently specific findings of substantial financial harm" where "the district court's final order cited and quoted relevant portions of the government's opposition brief that discussed individual examples of how specific victims had suffered substantial financial hardship and the extent of their individual hardships").

Furthermore, in his plea agreement, the government and Mr. Rudden stipulated that "[t]aking into account money returned to investors in the form of 'interest' payments, investors are currently owed approximately $20 million." Docket No. 33 at 12; *see Hanson,* 124 F.4th at 1018 (holding that the district court did not err in its factual determination that the defendant's "victims suffered substantial financial hardship under § 4C1.1(a)(6)," in part, because the district court fully adopted the PSIR that stated the "total loss to the victims in this case was $1,122,805.74" and that "at least thirty different victims" were defrauded); *United States v. Hise*, 2024 WL 1741590, at *2 (S.D. Ill. Apr. 23, 2024) (finding that the defendant was disqualified from a sentence reduction as a Zero-Point offender where at sentencing the court "increased [the defendant's] offense level by 2 points under U.S.S.G. § 2B1.1(b)(2)(A)(iii) because her offense resulted in a substantial financial hardship to one or more victims" and that even if "an enhancement for causing substantial financial hardship is not *per se* disqualifying, based on the information from the [PSIR], the sentencing hearing, and the restitution proceedings, the Court would independently find that [the defendant] personally caused substantial financial hardship"); *United States v. Pagartanis*, 2024 WL 2111544, at *2 (E.D.N.Y. May 10, 2024) ("U.S.S.G. § 4C1.1(a)(6) is present because [the defendant] personally

stole over $13 million from more than a dozen victims – almost all of whom were elderly women – through the sale of fraudulent investments and Ponzi scheme-like activity.").

Given the nearly $20 million in loss, the substantial financial loss enhancement adopted by Judge Arguello, and evidence of individualized financial hardship caused by Mr. Rudden's offense, the Court finds that Mr. Rudden is not eligible for a reduction in his sentence under Part B of Amendment 821.

**B. Motion for Appointment of CJA Counsel**

Mr. Rudden asks that the Court appoint counsel pursuant to the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A, to "help with [his] critical medical care as well as [his] Motion for Early Termination of my sentence."  Docket No. 111 at 1.  Because the Court will deny Mr. Rudden's motion for a reduction in sentence, it will deny that portion of Mr. Rudden's motion that seeks appointment of CJA counsel for purposes of seeking a reduction in his sentence.  As for Mr. Rudden's request that he be appointed CJA counsel for purposes of obtaining medical care, the CJA does not provide for representation in such a case.  Title 18 U.S.C. § 3006A(a)(1) states:

> (1) Representation shall be provided for any financially eligible person who—
>
>> (A) is charged with a felony or a Class A misdemeanor;
>>
>> (B) is a juvenile alleged to have committed an act of juvenile delinquency as defined in section 5031 of this title;
>>
>> (C) is charged with a violation of probation;
>>
>> (D) is under arrest, when such representation is required by law;
>>
>> (E) is charged with a violation of supervised release or faces modification, reduction, or enlargement of a condition, or extension or revocation of a term of supervised release;
>>
>> (F) is subject to a mental condition hearing under chapter 313 of this title;

7

(G) is in custody as a material witness;

(H) is entitled to appointment of counsel under the sixth amendment to the Constitution;

(I) faces loss of liberty in a case, and Federal law requires the appointment of counsel; or

(J) is entitled to the appointment of counsel under section 4109 of this title.

18 U.S.C. § 3006A(a)(1).  Mr. Rudden has not demonstrated that he is an individual that is entitled to representation under the CJA pursuant to § 3006A(a)(1).

Therefore, it is,

**ORDERED** that the Motion to Reduce Sentence Pursuant to Amendment 821 of the U.S. Sentencing Guidelines and Request for the Appointment of a Federal Defender [Docket No. 106] is **DENIED**.  It is further

**ORDERED** that the Request for Appointment of New CJA Counsel [Docket No. 111] is **DENIED**.

DATED April 15, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge